No. 83-128

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

IN RE THE MARRIAGE OF

CARMA J. GLASSER,

         Petitioner and Respondent,

  -vs-

WILLIAM B. GLASSER,

         Respondent and Appellant.

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Meagher,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John V. Potter, Jr., White Sulphur Springs,
        Montana

    For Respondent:

        Galt & Swanberg: Robert F. Swanberg, Helena,
        Montana

Submitted on Briefs: June 30, 1983

Decided: September 29, 1983

Filed: SEP 29 1983

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by William B. Glasser on the amended findings of fact and conclusions of law from the judgment in a dissolution proceeding. His wife, respondent, Carma Jean Glasser, brought an action for dissolution and division of the couple's property in the District Court of the Fourteenth Judicial District In an For the County of Meagher.

The procedural facts in this case, are that the case was heard July 6, 1982, by the District Court sitting without a jury. On September 16, 1982, the court filed findings of fact and conclusions of law and on October 6, 1982, entered a decree of dissolution and property division. The Wife filed a motion to amend the findings of fact and conclusions of law. The Husband filed a motion to correct a clerical mistake in the findings, in the alternative to amend findings, and to amend the judgment. Both Husband and Wife agree that the court was in error in stating the value of some of the property. After delays by the court, hearing was held November 16 on the above motions. On November 18, the court granted the Wife's motions to amend the findings and denied the Husband's motions. On November 20, the Wife filed a motion to appeal in order to preserve the right of appeal. The court thereafter entered an amended decree of dissolution and property settlement on November 26. Husband appealed from that decree, from the amended findings of fact and conclusions, and from the amended decree. By stipulation, the parties agreed to name the Husband as the

appellant and the Wife as the respondent.

The parties were married in Butte, Montana, on September 8, 1955. During the years of the marriage, the Husband worked at various jobs and employment such as plumbing assistant, sawmill work, butcher, carpentery work and for a period of time was a partner in a building contractor business. At the time of this action the Husband worked for a school system performing maintenance work. The Wife, during the early years of the marriage, primarily reared their children and occasionally held part-time or temporary employment. In 1973 the wife secured full-time employment at the First National Bank at White Sulphur Springs. She remains employed there at the time of this action with an annual salary of $11,000 per year, plus fringe benefits that include a retirement employer profit-sharing plan.

During the course of the marriage, the Wife's father, Alfred M. Edward, provided financial assistance to the Glassers. He permitted them to live at his residence for about a year, rent free. In 1970, he deeded a cinderblock house to Wife. The Glassers lived there until 1978; since that time they used the house for rental purposes. In 1974, Edwards established a ten-year reversionary trust, naming the Wife as beneficiary to the income from the trust. This trust income increased from a yearly amount of approximately $4,000 in 1974, to over $6,000 at the time of this action. The Wife used this money for vacations, investments, and as a primary source for paying expenses on a house the Glassers began building in 1978.

There are three children of this marriage, all of whom

have reached the age of majority prior to the date of commencement of this action.

In 1958 the Husband purchased a small trailer home. In 1960, he traded it for a larger mobile home that cost $7,200 on an installment contract. In 1962, they purchased a lot located in White Sulphur Springs for $800 and maintained the mobile home on that lot. In 1970-1978, as mentioned, they moved into the cinderblock house that was given to the Wife by Edwards. During this period, Husband made repairs and improvements on the house. In 1978, they built a new principal family house on the lot that was purchased in 1962. At the time of the construction of that house, Husband was a partner in a constuction firm. The firm built the house. Husband donated his time towards the construction and was able to purchase housing materials through the firm at a discount. Husband, in 1979, purchased a house in the "Skunk Hollow Addition," [the title description lists this property in the Higgins Addition], in White Sulphur Springs, with an alleged partner, Lawrence Johnson. However, the deed reflects that Husband owns the property fee simple.

This appeal arises over a dispute over the findings and conclusions on the following property:

1. The cinderblock house located in White Sulphur Springs;

2. The recently constructed principal family house located in White Sulphur Springs;

3. The "Mulski" house, located in Skunk Hollow Addition;

4. A coin collection valued at approximately $2,300.

-4-

5. Wife's interest in a profit sharing plan that was 60 percent vested at the date of this action with a value of $10,470 if entirely vested.

The appellant raised two issues before this Court:

1. Can the court, by motion to amend, make a wholesale adoption of findings of fact and conclusions of law submitted by respondent's counsel.

2. Are the findings of fact and conclusions of law sufficiently supported by the evidence and thereby support the property division reached by the court.

Husband first objects, that his motion for clerical corrections or amended findings and conclusions must be granted, because of the blatant errors in the original findings and conclusions. The court, in adopting Wife's amended findings and conclusions, made the necessary clerical corrections set forth to Husband. The court was also within its discretion to deny the Husband's amendments to the findings and conclusions. Therefore, we find no merit in this objection by the Husband.

The Husband argues that the court was in error by "wholesale adoption" of the amendments proposed by the Wife. Appellant cites In Re the Marriage of Beck (Mont. 1981), 631 P.2d 282, 38 St.Rep. 1054, for rejecting the courts "wholesale adoption" of one parties proposed findings of fact and conclusions of law proposed by Wife's counsel. This Court admonished the trial court's practice of rubberstamping the proposed findings of fact and conclusions of law given by one counsel, and not doing their own work. There, this Court found the findings to be clearly erroneous and therefore set aside the judgment.

-5-

In Tomaskie v. Tomaskie (Mont. 1981), 625 P.2d 536, 38 St.Rep. 416, the court vacated a judgment that was based on the Husband's proposed findings and conclusions adopted verbatim. Those findings and conclusions failed to provide the necessary information as specific in the statute, in which to base a proper judgment. The Court warned, "[i]t is becoming increasingly apparent to this Court, however, that the trial courts rely too heavily on the proposed findings of fact and conclusions submitted by the winning party. That is wrong!" Tomaskie, supra, 625 P.2d at 539, 38 St.Rep. at 419.

In both of those cases, the findings and conclusions were either clearly erroneous or insufficient. But, the fact that the trial court adopted one side's proposal was not in itself reason for vacating the judgment. Kowis v. Kowis (Mont. 1983), 658 P.2d 1084, 40 St.Rep. 149, the court made "wholesale adoption" of findings and conclusions. However, in that case the findings and conclusions were "extensive and detailed [and] the court painstakingly explained its reasons for distribution." Kowis, supra, 658 P.2d at 1087, 1088, 40 St.Rep. at 153. This Court refused to overturn the trial court base solely upon "wholesale adoption," "[w]here, as here, findings and conclusions are sufficiently comprehensive and pertinent to the issue to provide a basis for a decision, and are supported by the evidence. They will not be overturned simply because the court relied upon proposed findings and conclusions submitted by counsel." Kowis, supra, 658 P.2d at 1088, 40 St.Rep. at 154.

In Speer v. Speer (Mont. 1982), 654 P.2d 1001, 1002,

39 St.Rep. 2204, 2205, this Court said:

> "This Court has discouraged District Courts from the practice of adopting the prevailing party's proposed findings of fact and conclusions of law virtually verbatim. . . . Such practice may lead to error. . . once findings and conclusions are adopted by the District Court, however, the 'clearly erroneous standard at Rule 52(a) supports them on appeal.'"

In this case, the Court drafted the original findings and conclusions, but they contained some inaccuracies and clerical mistakes. When both Husband and Wife submitted amended findings and conclusions, the court adopted the amendments submitted by the Wife. These amendments substantially changed the original decreed property distribution. Without a showing that the amended findings and conclusions are clearly erroneous (see Rule 52(a), M.R.Civ.P.) then they will stand despite "wholesale adoption." Therefore, the findings and conclusions must be examined in light of the evidence to determine if the findings and conclusions were clearly erroneous.

Husband claims the amended findings and conclusions regarding Wife's profit-sharing retirement plan were clearly erroneous. Husband asserts that, "[c]ontributions to the plan were made by Wife's employer during the marriage and were part of "employee benefits," and therefore part of the marital property. The court, however, found the "[p]rofit-sharing program incidental to her employment at the bank . . ." and therefore the Wife's separate property.

We find the trial court erred in its finding the profit-sharing plan to be the Wife's separate property.

The president of the First National Bank of White Sulphur Springs, Michael Grove, explained this

profit-sharing program as follows:

"Q. Okay. Maybe I would be more correct in saying it is an incentive program because it is based on profits. If the bank is profitable, if the employees work well, they receive additional compensation in the form of a profit-sharing plan from the bank; would that be true? A. That's true, and in addition to that it is an incentive program to retain with the Bank. The longer they stay--that's the reason it is vested. The longer they are there, the more reason they have to be there, hoping that their--

"Q. So this is really money Mrs. Glasser has earned, by being a good and faithful employee, and working with others to insure the Bank a profit; wouldn't that be true? A. I would say. It has been contributed to the plan for her. She won't earn it, or it is not, I guess earned income that is available to her benefit, as you would say, until retirement age I hope."

This line of testimony clearly indicates that the profit-sharting program is more than incidental to employment, it is a form of deferred compensation and should be treated in the same manner as retirement benefits (fnt. #2). The Internal Revenue Service permits companies to establish profit sharing plans for their employees that provide certain tax benefits. Internal Revenue Code Section 401 et. seq.: "A profit-sharing plan within the meaning of 401 is primarily a plan of deferred compensation, * * *." Federal Tax Regulation Section 1.401-1(b)(ii). In Kis v. Kis (1982), 639 P.2d 1151, 39 St.Rep. 119, we found that the husband's retirement benefits in the game warden's retirement fund were marital property and thereby subject to property distribution.

Wife argues, if the profit-sharing plan is considered marital property and should be divided, then Husband would

be entitled to one-half of the present value of her vested interest. We agree. In Kis, supra, we stated that, "[p]resent value is the 'proper test' for determination of marital interest. However, further evidence may demonstrate the value 'might be affected by the contingency of the retirement benefits failing to reach levels used by the court.'" Kis, 639 P.2d 1153, 39 St.Rep. at 123. In Kis, the Husband was vested in his retirement fund and therefore the court could use the entire amount of the present value of his retirement funds.

Other states distribute retirement funds for property settlement purposes in different ways depending upon if the interest is vested, unvested, matured or not matured.

In the Matter of the Marriage of Rogers and Rogers (1980), 45 Or.App. 885, 609 P.2d 877, a case involving an appeal by the Husband of the awarding of part of the retirement to the Wife, the court reviewed cases from different states involving property distribution of retirement benefits and set forth the following guidelines:

> "For example: (1) The distribution should generally be based on the contributions made during the marriage. (2) The courts should continue to strive to disentangle the parties as much as possible by determining, where equitable, a sum certain to be paid rather than a percentage based upon expected future contingencies. (3) In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, spousal support, and other property distribution. (4) Where courts determine that the parties will share in the benefits on a proportional basis, the parties should also share the risks of future contingencies, e.g., death of the employe spouse or delayed retirement of the employe spouse, and payment should be to the receiving spouse as the employe

> spouse receives the retirement pay. (5)
> Courts should consider, where
> appropriate, an award of a portion of
> retirement benefits where other property
> awarded is not adequate to make an
> equitable distribution." 609 P.2d at 882,
> 883.

It should be noted that in some cases federal statutes preempt the distribution of retirement benefits in a property division. For example, in Re Marriage of Knudson (Mont. 1980), 606 P.2d 130, 37 St.Rep. 147, the Court found that pension benefits under the Railroad Retirement Act may not be included in property distributions. However, where federal statute does not preempt, the retirement benefits should be considered part of the marital property.

In this case, evidence was introduced that at the time of the hearing Wife had worked at the bank for nine years and was vested at 60 percent of her share with a present value interest of $10,470. Therefore, the amount of retirement benefit attributed to the marital property should be 60 percent of $10,470.

The Husband next contends that the court erred in it's findings and conclusions regarding the real property acquired during the marriage. The court found that the cinderblock house was the Wife's separate property, the "Mulski" house the Husband's separate property and the new family residence to be 71.939 percent Wife's share and 28.060 percent Husband's share.

Husband objects to the cinderblock house being found to be the Wife's separate property. Although Edwards (Wife's father) gave the house to Wife, the Husband contends that his continued maintenance on the house during the eight years they lived there brings this property into the marital

-10-

share. Husband relies upon Herron v. Herron (Mont. 1980), 37 St.Rep. 387, 608 P.2d 97, to support his argument. In Herron, supra, the wife received gifted property from the wife's father. Both parties contributed to the maintenance of the property. The property appreciated in value. This Court held that "[b]oth parties should share equally in the portion of the value of the gift property attributable to contributions from marriage and appreciation during the marriage." See also, In Re the Marriage of Balsam (1979), 180 Mont. 129, 589 P.2d 652.

It is not error for the court to give the Wife the entire amount of this property. This is within the discretion of the trial court. While we may disagree with the findings of the trial court; the Husband did not present sufficient contrary evidence to the record for these findings to be reversed.

Husband next objects to the findings and conclusions regarding the new residence property distribution. He contends that the court should not have found Wife to have contributed a greater percentage to the value of the new residence. He argues that the money from the Wife's trust fund no longer was traceable after it was deposited in their joint bank account and therefore cannot be attributed as added value of the new residence. He relies on Metcalf v. Metcalf (1979), 183 Mont. 266, 598 P.2d 1140. In Metcalf, this Court expressed the view that if inheritance funds are not traceable, then they may not be considered as separate property of the spouse. In that case, the appellant inherited $5,000 and used it on expenses and assets of the marriage, and thereby making it impossible to trace the

funds.

In <u>Herron</u>, supra, this Court permitted the trial court to find a gift traceable, when it was originally applied to a down payment on a house in Seattle. Then, the Seattle house was sold and the proceeds used for a house in Connecticut. That house was sold in a similar arrangement for a house in New York. Finally, the proceeds of the sale of the New York house were applied to the purchase of Flathead Lake property.

In the case at hand, the trustee paid income from the "Edwards" revisionary trust to the Wife beginning in 1974. Wife placed this money in certificates of deposits (CD's). These CD's were cashed in and placed in savings or checking accounts and used for payments for costs incurred on the construction of a new residence. There is sufficient evidence to support the court's findings. Therefore, we will not disturb the court's findings on the new residence.

Husband objects to the court's failure to find a contribution of additional hours worked, beyond the hours° recorded for business purposes, for his contribution to the new residence. Husband claims he worked weekends, and after business hours. He claims that the business records introduced do not reflect this contribution. We may disagree with the court's findings, but we will not overturn it. We see no abuse by the court in reaching this finding.

Husband objects to the finding by the court that the "Mulski" house is entirely within his ownership. Husband testified at the hearing that he owns the property in partnership with a Lawrence Johnson. However, the evidence introduced indicates otherwise. A copy of the deed to the

property named Husband as the sole owner of the property.

Husband objects to the court's findings and conclusions regarding "other property." Except for the "coin collection," we find no error in the findings. However, findings and conclusions regarding the "coin collection" appear contradictory. The court, in finding no. 16 states: "the coins were acquired with Wife's wages during the marriage and therefore constitute marital property subject to division." However, in amended finding no. 30, the court failed to include the value of the coin collection as part of the list of property subject to division. Then, in the amended decree at dissolution and property division, the court awarded the coin collection to the Wife. Clearly, there was error in awarding the coin collection to the Wife without first including its value in the marital property and adjusting the property division accordingly.

The amended decree should be vacated and this case is remanded for further action consistent with this Opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-13-