No. 84-490

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE MARRIAGE OF
MARY ISABELLE SIRUCEK,

                    Petitioner and Appellant,

      and

ROBERT SIRUCEK,

                    Respondent and Respondent.

Appeal from:  District Court of the Tenth Judicial District
              In and for the County of Fergus
              The Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

      For Appellant:

            Linnell, Newhall & Martin, Great Falls, Montana
            Norman L.  Newhall, III, Great Falls, Montana

      For Respondent:

            Swanberg, Koby, Swanberg & Matteucci,
             Great Falls, Montana
            Daniel Falcon, Great Falls, Montana

                              Submitted on briefs: Sept.  6, 1986

                                    Decided: December 31, 1985

Filed:  DEC 31 1985

_____
                    Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mary Isabelle Sirucek (wife) sought a dissolution of her marriage from Robert Sirucek (husband) in the Tenth Judicial District Court for Fergus County. The wife appeals from the division of the marital estate. We affirm the District Court.

The issues on appeal are:

1. Did the District Court err in adopting the Stanton appraisal of the ranch property, in particular the valuation of timberland?

2. Did the District Court err in including the wife's teacher's retirement pension in the marital estate?

3. If the teacher's retirement pension was properly included in the marital estate, did the District Court properly value that pension?

4. Was the marital estate equitably divided between the wife and husband?

5. Did the District Court err in failing to award the wife any share in the appreciation or equity build-up of the ranch during the course of the marriage?

6. Did the District Court err in adopting inconsistent discount rates for the ranch real property and the teacher's retirement pension?

7. Should the District Court have ordered the sale of the ranch and division of the sale proceeds?

The following findings of the District Court are not disputed: The parties were married in 1970 and cohabited as husband and wife for 12½ years. At the time of the divorce, the wife was 52 and the husband was 63. No children were born of the marriage. The wife had five children from a

previous marriage. Three of her children lived on the Sirucek ranch for a number of years before reaching the age of majority. The husband had been married twice before and had three children of his prior marriages. One of his children also lived at the ranch after the parties' marriage. Neither the husband nor the wife adopted any of the other's children. There is no claim for child support or spousal maintenance. At the time of marriage, the wife was teaching school in Lewistown, and the husband was living on his ranch about eight miles east of Lewistown. After the marriage, the wife and her three minor children moved to the ranch, where they lived as a family unit until each of the children graduated from high school. The parties continued to live together until 1983, when the wife moved to Lewistown.

The wife has a bachelor's degree in education and has taught school continuously in the rural schools of Montana since the early 1960's. She has taught in Lewistown since 1967. The husband brought to the marriage ranch real property, farm machinery and various livestock. At the time of the marriage, the wife owned certain household items and a car. In 1973, the husband sold 230 acres of the ranch land, leaving approximately 1,393 acres of crop land, pasture and timberland. The ranch includes various improvements, including a ranch house. During the marriage, the wife earned approximately $162,000. During the same period of time, the ranch had a total income tax loss of approximately $119,000, including the non-cash expense of depreciation. The ranch operation was not and is not a profitable business venture. The District Court found that the ranch land had appreciated in value during the years of marriage as a result of inflation, not because of labor or money invested by

either party. The husband desires to continue to run a cattle operation on the ranch. The wife requests that the ranch be sold and the proceeds divided between them.

Of particular significance are the findings by the District Court that both the wife and the husband made substantial contributions to the marriage. The wife served as homemaker, did most of the cooking and general housekeeping, performed chores around the ranch, and held a job as full time teacher. The husband provided a home for the wife and her three children, was a stepfather for the three children, provided responsible paternal care and discipline, taught one of the wife's children how to operate ranch machinery, shared in the housekeeping duties and meal preparation, and was responsible for operating the ranch. The court found an equal and offsetting contribution by each of the parties to the marriage. The court also found that the wife was not entitled to a percentage of the increase in value of ranch land.

In its extensive findings, the District Court considered the factors set forth in § 40-4-202, MCA, pertaining to the division of marital property. We will not list all of the factual findings in connection with the factors in that code section. However, we note that both parties were found to be in good health, the wife being 52 and the husband 63, and the parties' basic needs for food, clothing and housing were identical. The court further found that the wife has a greater opportunity for acquiring future income and capital assets because of her continually increasing teacher's salary, whereas the husband is faced with continuing ranch operation losses. The husband's ability to acquire capital assets is premised upon an inflationary increase in value of

land and an opportunity to borrow additional money. The District Court valued the ranch land and improvements as a farm and ranch operation and did not consider dividing the ranch land and selling tracts for recreational, residential sites. The parties' mutual debts to the Central Montana PCA and Federal Land Bank were deducted from the value of the marital assets.

The District Court divided the marital assets between the parties as follows:

TO ISABELLE

| | |
|---|---|
| Teacher's Retirement Pension | $56,362.00 |

TO ROBERT

| | |
|---|---|
| Vehicles (excluding Datsun pickup) | $11,320.00 |
| Farm machine and equipment | 28,425.00 |
| Horses | 15,000.00 |
| Cattle | 34,400.00 |
| Gold & silver | 1,050.00 |
| Ranch land and improvements | 290,000.00 |
| TOTAL | $380,195.00 |
| Less Liabilities | $114,516.34 |
| NET | $265,678.66 |

The wife appeals from this determination and distribution.

I.

Did the District Court err in adopting the Stanton appraisal of the ranch property, in particular the valuation of timberland?

The wife's primary objection is that the District Court essentially adopted the appraisal by Mr. Stanton, including his appraised value of $80 per acre for timberland. In contrast, the Thor appraisal, submitted by the wife, showed a value of $183 per acre for timberland.

We have reviewed the evidence submitted by and through the appraisers. We have considered the testimony by the appraisers, who personally appeared before the court. The testimony of Mr. Stanton established his extensive qualifications for appraisal of farm and ranch lands in Montana. His testimony further demonstrated extensive work in reviewing the records, examining the land, and talking to knowledgeable realtors and other parties in the area. In addition, Mr. Stanton explained at length the basis for his conclusions that hayland on the Sirucek ranch should be valued at $350 an acre, open grazing land at $200 per acre and timber grazing land at $80 per acre. So far as the timberland is concerned, the Stanton appraisal established that the highest and best use was as a part of a ranching operation and that the limited grazing available on the timberland justified a valuation from one-third to one-fourth that of open grazing land. Mr. Stanton further explained why he disagreed with Mr. Thor's appraisal of $183 per timber acre.

We conclude there is substantial evidence to support the Stanton appraisal of ranch property, including improvements, at a total value of $285,000. There is substantial evidence to support Mr. Stanton's conclusion that the timber grazing acreage should be valued at $80 per acre.

As a result, we affirm the District Court's valuation of the ranch and improvements.

II

Did the District Court err in including the wife's teacher's retirement pension in the marital estate?

In substance, the wife argues that because she contributed in the course of the marriage so many dollars of

her teacher's salary as compared to the ranching losses contributed by the husband, it is inequitable to include her teacher's retirement pension as a marital asset.

We will discuss the detailed provisions of § 40-4-202, MCA, with regard to division of property in a subsequent issue. The portion of the pension included as a marital asset was the value of the pension rights earned during the 12½ years of the marriage. That value was established by the testimony of an economist.

It is well established in Montana that retirement benefits are classed as a part of the marital estate. In Re Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 83, 42 St.Rep. 623, 627. The opportunity of each party to acquire capital assets and income in the future must be considered in apportioning the marital assets. Section 40-4-202(1), MCA.

There is substantial evidence to support the finding of the District Court that this pension should be included in the marital estate. The wife has failed to meet her burden of showing that such finding is clearly erroneous. Where substantial credible evidence supports a finding of the trial court, that finding will be upheld. Rule 52(a), M.R.Civ.P.

We hold that the District Court properly included the wife's teacher's retirement pension in the marital estate.

III

Did the District Court properly value the pension?

The wife argues that at the time of the divorce, she had accumulated $16,726.69 in her retirement pension. She contends that that amount is the total amount of money presently available to her. She points out that $949.24 of that amount was earned prior to the marriage. She therefore

contends that the valuation of the pension fund should be $15,777.45.

The valuation of the teacher's retirement pension at $56,362.00 was based upon the extensive testimony and evidence submitted by an economics professor who testified as an expert for the husband. The professor's qualifications were clearly established. He testified at length as to the manner in which his valuation was prepared and the reasons for the various conclusions which he reached. The unrebutted testimony is that the procedure followed is a standard procedure used in his profession for work life and life expectancy estimates. We conclude there is substantial evidence to support the expert's valuation, which was accepted by the District Court.

The wife argues that the only amount which should be included is the dollar amount in the pension fund at the time of the divorce. That is not the test which has been established in Montana.

In Kis v. Kis (1982), 196 Mont. 296, 639 P.2d 1151, this Court included in the marital estate the retirement benefits of a game warden employed by the State of Montana. We held that the present value of the retirement benefits is the proper test. We pointed out that such present value might be affected by the contingency of retirement benefits failing to reach the levels used by the court. However, no evidence was offered showing what effect such a contingency would have in diminishing the present value of the husband's retirement benefits. We therefore concluded that the finding of valuation by the District Court must be upheld.

In this case, the economics expert testified in this case that his objective was to establish the value of pension

rights earned by the wife during the marriage. His testimony contains substantial evidence as to the present value of the pension interest. His testimony established that the present value of the total pension interest as of the date of trial was $111,476.00, and that the portion of that present value which was attributable to her 12½ years of marriage was $56,362.00. Thus the record contains substantial evidence to support the finding of the District Court that, for marital estate purposes, the value of the wife's pension was $56,362.00.

There is no legal authority for using the amount paid in as of a particular date as the present value. The wife argues that Glasser v. Glasser (Mont. 1983), 669 P.2d 685, 40 St.Rep. 1518, affords a basis for concluding that the amount paid in by the pension owner is the correct valuation. That is not a correct statement of the Glasser holding. In Glasser, this Court stated that the present value is the proper test for determination of marital interest. The Court pointed out that evidence established that the wife had worked for a number of years. Sixty percent of her share of retirement benefits had vested with a present value interest of $10,470.00. We therefore concluded that 60 percent of $10,470 should have been included in the marital estate. Glasser, 669 P.2d at 689, 40 St.Rep. at 1523. That conclusion does not contradict the holding of Kis, where retirement benefits had vested completely in the husband.

We hold that the District Court properly valued the wife's teacher's retirement pension.

IV

Was the marital estate equitably divided?

- 9 -

The wife points out that the District Court found that her income contributions to the marriage were greater than her husband's and that she had made substantial nonmonetary contributions which were equal to those of the husband. The wife does not dispute those findings. She disputes the court's conclusion that in spite of her equal contribution to the marriage, it was equitable to award her less than 20 percent of the net marital estate. She argues that the findings of fact do not support the court's conclusion as to an equitable distribution of marital property.

Section 40-4-202, MCA requires that the court equitably apportion between the parties the property and assets belonging to either or both. In making that apportionment, the court is required to consider the duration of the marriage, prior marriages, age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs and opportunity for future acquisition of capital assets and income. The court is also required to consider the contribution of a spouse as a homemaker or to the family unit.

> . . . Section 40-4-202 is flexible and its vests a good deal of discretion in the District Court. . . . We have stated, before and after the adoption of the statute, that each case must be looked at individually, with an eye to its unique circumsances.

In Re Marriage of Sell (Mont. 1981), 630 P.2d 222, 225, 38 St.Rep. 956, 959, quoting In Re Marriage of Aamenson (1979), 183 Mont. 229, 598 P.2d 1120 (citations omitted).

The findings of the District Court establish that the court considered each of these factors. The discretion granted to the District Court in reaching an equitable division of a marital estate is broad and far-reaching. As

- 10 -

this Court stated in In Re Marriage of Perry (Mont. 1985), 704 P.2d 41, 43, 42 St.Rep. 1101, 1104:

> . . . In dividing property in a marriage dissolution, the District Court has far-reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.

The District Court made findings as to the 11 year disparity in age, the comparative good health of the parties, and the significant difference in the opportunities of each for future acquisition of capital assets as well as income. The court pointed out that the husband's ability to acquire assets was premised upon a continued inflationary increase in land values and a resulting opportunity to borrow money on the land. The recent history of the value of Montana ranch lands does not support a conclusion that an inflationary increase in land should be presumed. The record does not establish that a sale of the ranch, which was distributed to the husband, would necessarily result in a net profit to the husband substantially equivalent to the retirement pension fund, which was distributed to the wife. In view of the limited income potential of the ranch, it is apparent that the husband would not have a capacity to pay a significant amount of money out of future earnings to the wife or to establish an equivalent retirement fund for himself. The propriety of a forced sale of a family ranch of this type rests in the discretion of the District Court.

Our review of the record establishes that there is substantial evidence to support the District Court's division of the marital estate. Finding no abuse of discretion, we affirm the court's division of the marital estate.

- 11 -

Did the District Court err in failing to award the wife any share in the appreciation or equity build-up of the ranch during the course of the marriage?

In dividing property acquired prior to marriage and the increased value of such property, the District Court must consider nonmonetary contributions of the homemakers and the extent to which such contributions facilitated the maintenance of the property. Section 40-4-202, MCA. The court clearly did consider these factors.

The wife argues that at the time of marriage, the husband had a net worth of approximately $110,000. The ranch-related assets and the gold and silver, less liabilities, totalled approximately $265,000 at the time of dissolution. The wife argues that this increase was essentially the result of inflation and appreciation in land values. She points out that the District Court found that she had made a contribution to the marriage equal in amount to that of her husband, yet she was not given any percentage of the increase in value of the ranch lands.

It is clear that under the appropriate circumstances, the contribution of a spouse may entitle that spouse to a share of the marital estate. That legal question is not at issue. The issue is whether or not the proof of an inflationary increase in ranch value of necessity entitles a spouse, who has made an equal contribution to the marriage, to some share of that inflationary increase.

We find it inappropriate to focus so heavily on the inflationary increase. We will not again list the various factors which the court must consider and balance in making an equitable distribution of property under the provisions of

§ 40-4-202, MCA. The right to share in particular property must be considered along with all of the other applicable factors. Our review of the record and the findings and conclusions of the District Court indicate that the District Court carefully considered each of the appropriate factors and attempted to balance the same.

The husband is not unique in his attempt to operate a ranch at a continuing loss. That is one of the tragedies of farm and ranch management in this state in recent years. That also is a factor which the court could properly consider.

Essentially, the District Court was required to consider all of the factors mentioned in the statute and use them as a basis for arriving at a final equitable apportionment. We will not attempt to take the place of the District Court in the exercise of discretion in fashioning an equitable distribution.

We find substantial evidence to support the conclusions of the District Court. The wife has failed to demonstrate that the District Court abused its discretion. We affirm the apportionment of the ranch properties to the husband.

VI

Did the District Court err in adopting inconsistent discount rates for the ranch real property and the teacher's retirement pension?

With regard to the present value of the wife's pension right, the University of Montana professor who testified as an expert for the husband used a discount rate of 5.4 percent based upon a 30 year earnings average. The expert testified that this was a factor commonly used by economists in making such a present value analysis. That testimony was not

- 13 -

contradicted. The wife only argues that it was inconsistent to use that figure when a different discount percentage was used with regard to land valuation.

It is true that Mr. Stanton, who also testified for the husband on the ranch valuation, used a discount in his consideration of comparable sales in the area of the ranch in question. He pointed out that some sales were for cash and others were upon various contractual arrangements. Mr. Stanton testified that at the time of the entry into the comparable sales, the sellers could have invested money safely at 12 percent and that he considered that factor in adjusting the comparable sales. Again, no evidence was submitted to negate that testimony.

The wife has failed to present any evidence that the use of the two different rates is in fact contradictory. There is no evidence to support a conclusion that a 12 percent rate could properly have been factored in the pension computation; nor is there any evidence that a 5.8 percent rate would have been appropriate so far as the land was concerned. We conclude that there is no demonstrable reason that the court should have required any identity in the discount rates.

We hold that the court did not abuse its discretion in allowing the use of the different discount rates.

### VII

Should the District Court have ordered the sale of the ranch and division of the sale proceeds?

The District Court had the power to require the sale of the ranch and the distribution of the proceeds between the parties, had it chosen in its discretion to do so. The wife argues that the court should be required to take that step. She argues that the ranch was not an economic unit, and that

- 14 -

all of the factors which traditionally mitigate in favor of keeping the ranch in tact have been eliminated.

In substance, these contentions are another method of challenging the equitable apportionment of the marital estate under § 40-4-202, MCA. The District Court also considered the husband's desire to stay on the ranch and the fact that he had been a farmer and rancher all of his life. We do not find it necessary to again state our reasons for concluding that the District Court properly apportioned the marital estate.

We affirm that apportionment and conclude that the District Court was not required to order a sale of the ranch and division of proceeds.

The District Court is affirmed in all respects.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 15 -

Mr. Justice John C. Sheehy, dissenting:

I dissent. The division of marital assets, awarding $56,362.00 to the wife, and $265,678.00 to the husband is grossly unjust on its face. It is especially unjust in this case. The Teacher's Retirement Pension which constitutes the sole marital asset given to the wife was completely earned by the wife, through her own efforts. The portion of the marital estate awarded to the husband was preserved by the wife because she contributed all of her earnings during her marriage to the upkeep of the ranch which the husband now gets to keep in toto. I see this distribution as a flagrant abuse of discretion.

The excuse offered both by the District Court and this Court to sustain the award to the husband is that he can now go on operating his money losing venture, the ranch. One senses an unspoken hope both in the District Court and in this Court that the husband in fact will go broke by continuing to operate the ranch.

It would make more economic sense, and be in accord with justice, to require the sale of the ranch and thereafter to divide the proceeds between the parties, taking into account the Teacher's Retirement Pension. Instead, this woman, having worked 12½ years for the good of her husband's estate is told she could work for herself now. I do not see any justice in it.

_____
                Justice

16