No. 89-177

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN RE THE MARRIAGE OF
KERRIAN T. GARNER,

          Petitioner and Respondent,

  and

MARGARET S. GARNER,

          Respondent and Appellant.

FILED
'89 OCT 25 PM 2 27
ED SMITH, CLERK
MONTANA SUPREME COURT

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Camille T. Ventrell; Harris & Ventrell, Billings,
        Montana

    For Respondent:

        Mark Parker; Parker Law Firm, Billings, Montana

_____

Submitted on Briefs:  Aug. 17, 1989

Decided:  October 25, 1989

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The parties' marriage was dissolved by decree dated February 1, 1989, in the District Court for the Thirteenth Judicial District, Yellowstone County. Wife appeals various aspects of the decree and the findings of fact and conclusions of law contained therein. We affirm.

The issues in this case are:

1. Whether the District Court abused its discretion in failing to award interest on property settlement payments?

2. Whether the District Court erred in finding that appellant was not entitled to maintenance?

3. Whether the District Court erred in failing to award attorney's fees?

Margaret S. Garner (Margaret) and Kerrian T. Garner (Kerrian) married on March 18, 1966 in Pueblo, Colorado. Two children were born during the marriage. Both children had reached the age of majority before this action was filed.

During the course of the marriage, Kerrian was continuously employed outside the home. Margaret was a homemaker, raised the children and assisted Kerrian in his various employments. She also attended Eastern Montana College and obtained a degree in psychology.

In 1978, Kerrian and Margaret opened up a business which eventually became Kerrian's, Inc., a retail shoe store. During the first year of operation, Kerrian and Margaret were the only employees for the business. In 1980, the family business was incorporated. Kerrian was issued 51% of the outstanding shares and Margaret was issued 49% of the outstanding shares. For seven years, until 1985, they were both active participants in the business, involving themselves in the daily managerial activities.

2

In 1985, Margaret moved to San Francisco, California to attend law school at Hastings School of Law. During her absence, Kerrian continued to operate the business. While at law school, she relied upon Kerrian for financial support. At the time of trial she was on academic suspension due to a low grade point average. It was her intention to return to school and complete the requirements necessary for her degree which were estimated to take approximately one year.

Kerrian filed the petition for dissolution in December of 1987. The issues at trial were distribution of the marital estate, maintenance for Margaret and attorney's fees for Margaret.

The District Court addressed the distribution of the marital estate in two parts: first, the assets and liabilities of the parties, excluding the family business; and second, the family business. In part one the District Court found that the net distribution to each party should be on a 50-50 basis. In part two, the District Court found that the value of Kerrian's, Inc. should be divided on the basis of stock ownership, a 51-49 percentage basis.

Because animosity between the parties made it impossible for Kerrian and Margaret to continue in a business relationship, the court ordered Kerrian to buy Margaret's interest in the business and to pay her a total of $97,785.00. The court valued Margaret's share of the corporation at $85,970.50. In order to equalize the property distribution, the court further ordered Kerrian to pay $11,814.50. Thus, the total amount owed Margaret equaled $97,785.00. Kerrian was to pay her $3,000 per month until the debt was paid. This plan did not provide any provision for interest. The court also found that Margaret was not entitled to maintenance and further ordered both parties to

3

pay their own attorney's fees and costs in the action. This appeal followed.

I

Margaret argues that the trial court abused its discretion in the distribution of the marital estate by failing to award interest on the property settlement payments. According to the lower court's judgment, Kerrian must make monthly payments of $3,000.00, without interest, for 32.59 months until Margaret's cash award of $97,785.00 is fully paid. Margaret contends that this method of payment has the effect of devaluing her equity in the marital estate, and thus is an abuse of discretion on the part of the trial court. We disagree.

At the outset, we note that it is the stated objective of this Court to "pay a great amount of deference to the judgment of the District Court regarding property divisions." In re Marriage of Burleigh (1982), 200 Mont. 1, 8, 650 P.2d 753, 756. The standard of review of a lower court's judgment is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In re Marriage of Rolfe (1985), 216 Mont. 39, 45, 699 P.2d 79, 83.

The division of the marital property in a dissolution action is governed by the provisions of § 40-4-202, MCA. This statute dictates that a court take the needs and characteristics of the parties into account. The statute does not, however, mandate that the marital property be divided equally. Equity, not equality, guides a court's discretion in dividing the marital estate. In re Marriage of Fitzmorris (1987), 745 P.2d 353, 354, 44 St.Rep. 1809, 1811.

Margaret argues that the method of payment, dictated by the court below, has the effect of devaluing her share of the marital estate. It is her contention that the cash award is

4

necessarily devalued because it is paid over time. In order to accurately divide the estate, according to the stated goal of a 51-49 percentage, she should be awarded interest payments.

This argument, however, ignores the fact that the allowance of interest is within the discretion of the District Court. In re Marriage of Jacobson (1979), 183 Mont. 517, 600 P.2d 1183; In re Marriage of Wessel (1986), 220 Mont. 326, 715 P.2d 45.

A review of the facts does not support Margaret's contentions that the District Court abused its discretion. Personal property, acquired during the marriage, was split on a 50-50 basis. Kerrian's, Inc., was split according to stock ownership, or on a 51-49 percentage basis. In making this apportionment, the District Court made extensive findings with regard to the parties' needs and potentialities. It found that because of her employment skills, acquired through experience gained as assistant manager of the family business, and her education, including future graduation from a prominent law school, Margaret has an excellent opportunity for future acquisition of capital assets and income.

We do not disagree with these findings. A Juris Doctorate degree is a valuable income producing asset. Margaret testified that the top graduates from Hastings earn on the average of $40,000 to $65,000 a year. In contrast, Kerrian has only one year of college. He has worked in the family business for all of his adult life while Margaret received a college education at Eastern Montana College and two years of law school at Hastings. In light of these facts we hold that the trial court's property division was not an abuse of discretion.

5

## II

Margaret next argues that the District Court erred by refusing to award her maintenance. Again, we disagree.

An award of maintenance is appropriate if the spouse seeking maintenance "lacks sufficient property to provide for [her] reasonable needs; and is unable to support [herself] through appropriate employment. . ." Section 40-4-203, MCA. Margaret maintains that the court failed to take these principles into account when it refused to award her any maintenance. At trial, she requested maintenance until she completed her law school degree and gained admission to the bar. It was her contention that after distribution of the marital estate, she lacked "sufficient property" to provide for her reasonable needs. She further argued that she is unable to obtain appropriate employment until she is qualified to practice law.

Margaret was awarded the following property, at her request: a cabin at Flathead Lake, the liabilities against which exceed the value; the cash value of a life insurance policy; an IRA; her interest in a retirement/profit sharing plan; personal property; and the cash award of $97,785.00. She maintains that none of this property is income producing. Therefore, it cannot provide for her "reasonable needs."

According to the record, the cabin at Flathead Lake is subject to two separate mortgages of $84,769.00 and $22,315.00 each. The monthly payments on these liabilities total approximately $1500.00. These payments, it is argued, render the cabin an income-consuming piece of property, which will force Margaret to consume her property settlement payments to meet her financial needs. Therefore, the award of the cabin is not "sufficient property" as that term is used in § 40-4-203(1)(a), MCA.

6

We agree that the cabin is not income producing property. However, we also take note that Margaret insisted upon receiving the cabin during the entire dissolution proceeding. Kerrian wanted to sell the cabin to reduce the drain on the family cash. Our review of the court file reveals that Kerrian asked the court for an order allowing him to sell the property so that neither party would be faced with meeting the cabin's payments. Margaret resisted this motion. Therefore, in light of these facts, we hold that the trial court did not abuse its discretion in failing to order maintenance payments which are not necessitated by Margaret's "reasonable" needs but rather through her voluntary decision to choose a piece of property which consumed income.

Margaret also contends that she is entitled to maintenance because she cannot support herself through appropriate employment until she completes her law degree and gains admission to the bar. During the divorce proceeding, Margaret testified that prior to the filing of this action, she required approximately $3,000.00 a month to live on. Her expenses included $800.00 for apartment rent, and $110.00 to park her car. During separation and preceding the termination of the marriage, Kerrian paid Margaret $1500.00 a month maintenance. In the final judgment, however, the trial court did not award any maintenance.

The court based its decision, in part, on its determination that Kerrian was unable to pay any maintenance after meeting his own needs. Evidence at trial established that his disposable income averaged approximately $2,350.00 a month. We agree with the trial court that Kerrian would not be capable of providing Margaret with $3,750.00 a month maintenance.

The lower court also found that, contrary to Margaret's contentions, she is capable of supporting herself through

7

appropriate employment. Margaret argued that because of her low grades and her disqualified status (i.e. academic suspension), she is incapable of supporting herself. However, the record clearly shows and she testified that she could work as a law clerk for $10.00 an hour. Additionally, it was revealed, that at one point she received $800.00 a week while clerking for a San Francisco law firm.

This Court finds, therefore, that the District Court did not abuse its discretion in refusing to award Margaret alimony. As stated earlier, she received roughly fifty percent of the marital property after distribution. As part of this property distribution, the court ordered Kerrian to pay Margaret $3,000.00 a month for a period of over two and a half years. This income, realized from the property settlement, together with the excellent employment opportunities available to her as a result of her attendance at a law school, is adequate to supply her "reasonable needs."

III

Finally, Margaret maintains that the court erred in failing to award her attorney's fees and costs pursuant to the provisions of § 40-4-110, MCA. We find that the court's determination in this matter was reasonable and within its discretion. We affirm.

Justice

We Concur:

Chief Justice

Justices

8

Justice John C. Sheehy, concurring and dissenting:

I concur with all of the majority opinion, except that part which denies the wife interest on the deferred payments to be made by the husband to her.

There is an internal conflict in the order of the District Court and in the majority opinion on the subject of interest. The District Court found, and the majority agree, that the value of Kerrian's, Inc., should be divided between husband and wife in the ratio of 51-49. Then the District Court provided that the husband should pay wife the 49% amounting to $97,785 over a period of time (calculated at 32.59 months) at the rate of 3,000 per month without interest. Thus the husband will have the use of the wife's funds over a 2½ year period interest-free. I do not think the District Court, nor any member of the majority would see anything but injustice in such an arrangement if anyone of them were forced to the small end of the same deal. The value of the wife's award has been decreased by at least $7,500 under the District Court's order, and to me that is substantial enough to require fixing. I would reverse and remand for that single purpose.

John C. Sheehy
_____
Justice