No. 93-422

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

JOSEPH MARTIN BARKER,

       Petitioner and Appellant,

   and

KRISTEEN MAUD BARKER,

       Respondent and Respondent.

FILED

MAR 1 0 1994

Cd Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Jerrold L. Nye; Nye & Meyer, Billings, Montana

       For Respondent:

       W. Corbin Howard, Attorney at Law, Billings,
Montana

Submitted on Briefs:  December 9, 1993

Decided:  March 10, 1994

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Joseph Martin Barker (Joseph) appeals the distribution of marital property, the maintenance award to Kristeen Maud Barker (Kristeen), and the findings of fact and conclusions of law as set forth by the Thirteenth Judicial District Court, Gallatin County. We affirm.

Three issues are before this Court:

1. Did the District Court equitably divide the marital property?

2. Did the District Court err by awarding maintenance to Kristeen?

3. Did the District Court err by adopting, nearly verbatim, Kristeen's proposed findings of fact and conclusions of law?

Joseph and Kristeen were married on September 2, 1967. They live in Billings, Montana, and have two children, both of whom are now adults and enrolled in college. For most of the marriage, Joseph was an insurance salesman. After two years of being unemployed, he is again selling insurance. Joseph is also a reservist in the National Guard. Kristeen was a school teacher until 1982, when she quit to become a housewife. Kristeen is now working at a flower shop.

This case arises from the dissolution of the couple's twenty-six year marriage. Following a hearing on April 22, 1993, the District Court issued its findings of fact, conclusions of law and decree on June 15, 1993. The District Court valued the parties' marital estate (net)--the majority of which was the family home--at

$53,300. It awarded $45,055, or 84 percent of the marital estate, to Kristeen. The remaining $8,545, or 16 percent of the marital estate, went to Joseph. In addition, the court awarded Kristeen maintenance of $150 per month "until she remarries, cohabits, dies, or for five years, whichever occurs first." Joseph appeals.

I

Did the District Court equitably divide the marital property?

Joseph and Kristeen have two assets of monetary significance: their home and Joseph's forthcoming military pension. Joseph and Kristeen purchased their home in 1974. At the time of trial, the home was worth $60,000; however, it was encumbered by an $18,000 mortgage. From 1991 through 1993, Joseph was not employed. The couple fell seriously behind on its mortgage payments on three occasions. To avoid foreclosure, Kristeen and Joseph borrowed $6,500 from relatives. Additionally, Kristeen borrowed $3,000 from First Interstate West Bank.

Kristeen has remained in the family home and has made monthly mortgage payments of $305 since the couple separated in May 1992. She wants to keep the home. In August 1992, just before the house was to be sold in a foreclosure sale, Joseph told Kristeen that she should let the bank foreclose on the house. Instead, Kristeen secured the help of a clergyman to co-sign for a $3,000 loan and saved the home from foreclosure.

Joseph and Kristeen agreed that Kristeen should keep the family home. However, at trial, Joseph requested one-third of the home's equity, or $14,000, and suggested that Kristeen be given six

3

months to pay him that amount. To obtain the $14,000, Joseph was willing to participate in refinancing the home. The District Court awarded Kristeen the family home, including the total equity and debt associated with the home.

According to Joseph, the District Court's total award of equity to Kristeen is not supported by the facts or by any Montana case law dealing with the equitable division of home equity. Joseph argues that he and Kristeen are facing financial difficulties, and neither of them can pay their expenses. Joseph points to the necessity of obtaining an additional loan during the parties' separation as evidence that Kristeen cannot make the mortgage payments. Therefore, selling the house "is the only reasonable alternative for the parties" and it would "relieve the wife of debt and make assets available to her for her expenses."

Joseph draws an analogy between this case and In re Marriage of Martens (1981), 196 Mont. 71, 637 P.2d 523. In Martens, the wife was awarded two-thirds of the home equity and the husband one-third. In that case, we stated:

> The distribution of the equity in the house was based on the wife's acceptance of responsibility for it in the months prior to trial, her ability to continue this responsibility, and her desire to continue to do so when the husband did not express such a desire.

Martens, 637 P.2d at 526. Joseph also refers us to In re Marriage of Rogers (1987), 226 Mont. 163, 734 P.2d 677. In Rogers, this Court ordered the sale of the family home and an equal division of the proceeds. Kristeen, in turn, refers us to cases where spouses have received equitable, though unequal, property distributions.

4

See In re Marriage of Hecht (1982), 199 Mont. 363, 649 P.2d 1257 (wife received the entire equity in the home and 81 percent of the parties' net worth); In re Marriage of Sirucek (1986), 219 Mont. 334, 712 P.2d 769 (this Court approved an 18 percent to 82 percent split of the parties' net worth).

In the present case, the District Court also awarded Kristeen 45 percent of Joseph's military pension, which he will only be eligible to receive if he completes five more years of service in the Reserves. The court noted that Kristeen receives 45 percent of nothing if Joseph fails to complete his twenty-year service requirement. While Joseph does not specifically challenge the percentage award of his military pension, he does challenge the overall "vastly disproportionate" division of property considering the parties' "equal contribution" to the marital estate.

In reviewing factual findings which divide marital property, our standard of review is "whether the district court's findings are clearly erroneous." In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219 (citations omitted). We review the district court's conclusions of law de novo and examine whether the court correctly interpreted the law. Danelson, 833 P.2d at 219-20.

Montana courts analyze the allocation of marital property under § 40-4-202(1), MCA, which provides in pertinent part:

> In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in

5

lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

    (a) the nonmonetary contribution of a homemaker;

    (b) the extent to which such contributions have facilitated the maintenance of this property; and

    (c) whether or not the property division serves as an alternative to maintenance arrangements.

The district court must achieve an equitable distribution of the marital estate, not an equal distribution. In re Marriage of Shelton (1986), 219 Mont. 456, 459, 712 P.2d 782, 784. We grant the district court broad discretion to equitably apportion the marital property. Sirucek, 712 P.2d at 774.

The District Court rejected Joseph's request for $14,000 of equity in the home, finding that: 1) Joseph presented no evidence of the feasibility of refinancing the home; 2) the parties have poor credit and it would be highly unlikely that either or both of them could afford refinancing and associated costs; 3) since the separation, the home has only been saved through Kristeen's unilateral efforts; and 4) a decree requiring Kristeen to pay Joseph $14,000--absent refinancing the family home, which would double the existing encumbrance--would force Kristeen from her home. The court also declined to award Joseph equity in the home because he has a "substantially greater earning capacity" than

6

Kristeen; because Kristeen saved the home from foreclosure and if it had been up to Joseph, there would be no equity to divide; because Kristeen wishes to stay in the family home; and because Joseph would receive very little net present value on a sale of the home.

The court found that Joseph's expenses were overstated, because he now lives with another person who is employed full-time and contributes to their joint expenses. The court considered Kristeen's chances of returning to the teaching profession--noting her twelve-year absence from teaching and that she has an application on file with the school system--as opposed to the likelihood that she will remain employed in the flower shop. The court noted that Kristeen voluntarily quit her position as an English teacher because she and Joseph mutually agreed that she should stay home to care for the children. The court also found that Kristeen has no investments or savings.

It is apparent that the District Court considered Kristeen's monetary and non-monetary contributions to the marriage and marital home over the twenty-six years of the marriage. The findings of fact illustrate the court's thorough consideration of the factors set out in § 40-4-202(1), MCA. The District Court's findings as to the division of marital property are well supported by the record and are not clearly erroneous. We hold that the District Court properly followed § 40-4-202(1), MCA, and correctly interpreted the law.

7

Did the District Court err by awarding maintenance to Kristeen?

The court awarded Kristeen $150 per month maintenance "until she remarries, cohabits, dies, or for five years, whichever occurs first." After taxes, the total maintenance award will come to $123 per month.

A maintenance award will not be overturned unless the district court's findings are clearly erroneous. In re Marriage of Sacry (1992), 253 Mont. 378, 381, 833 P.2d 1035, 1037 (citation omitted). Maintenance is governed by § 40-4-203, MCA. That statute provides that the court can award maintenance if it finds that the spouse seeking maintenance:

> (a) lacks sufficient property to provide for his reasonable needs; and
> (b) is unable to support himself through appropriate employment . . .
> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . .
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;
> (e) the age and the physical and emotional condition of the spouse seeking maintenance; and
> (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203, MCA.

Joseph argues that before a court makes an award of maintenance, there must be an equitable division of marital property. See In re Marriage of Eide (1991), 250 Mont. 490, 821 P.2d 1036. He further contends that a reversal of the property division also requires a reversal of the maintenance award. See Vivian v. Vivian (1978), 178 Mont. 341, 583 P.2d 1072. Because we determined that the property division in this case was equitable, we are not <u>required</u> to reverse the court's maintenance award. See <u>Vivian</u>, 583 P.2d at 1075 (emphasis added).

According to Joseph, maintenance is only required when the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and she is unable to support herself through appropriate employment. See § 40-4-203, MCA. Joseph suggests that because Kristeen is a certified teacher, "there is no reason to doubt that she will eventually find a position." Joseph further challenges the court's finding that he has the ability to pay maintenance. Specifically, he contests the District Court's determination of his income.

Joseph contends that Kristeen created her financial situation by refusing to sell the house, an encumbrance which he suggests is not a reasonable need. See In re Marriage of Garner (1989), 239 Mont. 485, 781 P.2d 1125. In <u>Garner</u>, this Court held that:

> the trial court did not abuse its discretion in failing to order maintenance payments which are not necessitated by Margaret's "reasonable" needs but rather through her voluntary decision to choose a piece of property which consumed income.

<u>Garner</u>, 781 P.2d at 1128. However, as Kristeen correctly asserts,

9

Garner has no relevance here. Garner dealt with a wife who held recreational property at Flathead Lake. She was a law student in California with a promising employment future. In fact, as a first year law student, she made at one point $800 per week working for a law firm. In addition, she also received nearly $100,000 in cash as part of her property award.

In the case before us, we are dealing with a woman of modest means. While Kristeen is a certified teacher, she is currently employed as a salesperson for a Billings florist. After taxes, her net monthly income is $859. Her mortgage payment is $305 per month.

The District Court determined that Kristeen's listed monthly expenses of $1,682 are reasonable and necessary "especially considering the allocation of over 80 percent of the parties' debt to her." Although Kristeen's teaching credentials are on file with the school district and she "constantly" inquires as to whether any teaching positions are available, the court found that Kristeen has "no prospect of [her] income changing substantially."

The court found that Kristeen is "unable to fully support herself through her present employment." The District Court further considered: Kristeen's financial resources; the property—including equity and debt—apportioned to Kristeen; Joseph's ability to meet his own needs; Joseph's current employment/net monthly income of $1,176, based on his commissions after two months of work and his monthly National Guard stipend and annual training pay; that Joseph lives with a person who is employed full-time and

10

contributes to their joint expenses; and that Joseph and the person with whom he lives are jointly contributing to the support of her adult children.

The record clearly supports the District Court's maintenance award of $150 per month, for a period not to exceed five years, to Kristeen. The court fully considered the factors set out in § 40-4-203, MCA, when awarding maintenance to Kristeen. We hold that the District Court's findings are not clearly erroneous.

III

Did the District Court err by adopting, nearly verbatim, Kristeen's proposed findings of fact and conclusions of law?

Joseph contends that, with two minor exceptions--reduction of maintenance from $200 to $150 per month and denial of attorney's fees to Kristeen--the District Court erred by adopting Kristeen's findings of fact and conclusions of law verbatim. In support of his contention, Joseph cites In re Marriage of Kukes (1993), 258 Mont. 324, 852 P.2d 655. According to Joseph, Kukes stands for the following proposition:

> [W]holesale acceptance by the District Court of one party's findings of fact and conclusions of law is error as it indicates a lack of proper consideration of the facts and failure to use independent judgment.

Joseph is mistaken. In Kukes, we stated that

> [e]rror occurs when the court accepts one party's proposed findings of fact without proper consideration of the facts and where there is lack of independent judgment by the court.

Kukes, 852 P.2d at 657 (citations omitted). First, the District Court did not accept Kristeen's findings of fact "wholesale." In

11

addition to independently determining the maintenance award and denying Kristeen attorney's fees, the court also determined that Joseph would receive his grandfather's desk and a branding iron collection purchased by the parties, and that Kristeen would keep a ring originally owned by Joseph's grandmother.

Second, our holdings under Issues I and II establish that the District Court properly considered the facts before it, correctly applied the law to the facts, and correctly interpreted the law. Unquestionably, the District Court exercised independent judgment when making its findings of fact and conclusions of law.

Affirmed.

John Conway Harrison
Justice

We concur:

Justices

12

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's decision to affirm the District Court for the reason that I conclude that the District Court's findings were not clearly erroneous and its distribution of marital property was not an abuse of discretion. However, I do not subscribe to all of the reasons set forth in the majority opinion.

Specifically, I am unimpressed by the fact that Joseph lives with another woman to whom he pays rent, or that he occasionally provides financial assistance to her family. I fail to see how any of those facts are relevant to whether or not the marital estate was equitably distributed.

I conclude that it was equitable for Kristeen to receive the marital home, including its equity, because it was due solely to her efforts that the equity in the home was preserved by avoiding foreclosure. I consider this a valid consideration pursuant to § 40-4-202(1), MCA, which allows the district court to consider a spouse's contribution to the estate when distributing the estate.

For this reason alone, and because there is no serious disagreement with the District Court's distribution of the pension accumulated by Joseph during the couple's marriage, I would affirm the District Court's distribution of the marital estate.

Based on my conclusion that the estate was properly distributed and the additional evidence that following distribution Kristeen's income was still less than her living expenses, I also agree that there was sufficient evidence to support the District Court's conclusion that Kristeen was entitled to maintenance

13

pursuant to § 40-4-203, MCA. I do not agree with all of the conditions placed on the continuation of that maintenance. However, those conditions have not been appealed.

Therefore, I would affirm the judgment of the District Court.

Justice

14

March 10, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Jerrold L. Nye
NEY & MEYER
3317 Third Ave. North
Billings, MT 59101

W. CORBIN HOWARD
Attorney at Law
P.O. Box 7177
Billings, MT 59103-7177

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
　　Deputy