No.  90-598

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF

MICHAEL H. KEEDY,

     Petitioner and Appellant,

  and

CAROL SUE KEEDY,

     Respondent and Respondent.

**FILED**

JUN 13 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Katherine R. Curtis; McEwan, Weaver, Kaplan & Curtis, Columbia Falls, Montana

    For Respondent:

        James A. Manley; Manley Law Offices, Polson, Montana

Submitted on Briefs:  April 18, 1991

Decided:  June 13, 1991

Filed:

_____
        Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, Michael Keedy, appeals from the property distribution of the Eleventh Judicial District Court, Flathead County, in this marital dissolution action. We affirm in part, reverse in part and remand for further proceedings.

The appellant raises the following issues on appeal:

1. Did the District Court err in including the appellant's entire baseball card collection as a marital asset?

2. Did the District Court err in its valuation and distribution of the appellant's retirement benefits?

3. Did the District Court err in disregarding the values of certain marital assets disposed of by the parties following their separation but prior to the dissolution?

The appellant and the respondent, Carol Keedy, were married on May 27, 1973, in Lincoln, Nebraska. At the time of the marriage, Michael's education consisted of a bachelor's degree and a juris doctorate degree; Carol possessed a bachelor's degree in education. Two children were born to the marriage: a son, born on October 29, 1974, and a daughter, born on November 23, 1977.

Throughout the marriage, Michael has been employed as a lobbyist, attorney, legislator and, for the past seven years, district court judge. During the marriage, Carol worked primarily as a homemaker; she currently teaches at a private school.

The parties separated on April 1, 1989, and brought this matter before the District Court on April 30, 1990. The District Court entered its Amended Findings of Fact, Conclusions of Law, and

2

Order on August 3, 1990. Michael appeals.

The first issue raised on appeal is whether the District Court erred in including the entire baseball card collection as a marital asset.

The baseball card collection consists of approximately 100,000 baseball cards. Michael testified that he began the collection as a boy in 1954 and continued to collect the cards up through 1963. He resumed his card collecting again in 1971 and continued collecting baseball cards after his marriage to Carol in 1973. At trial he introduced into evidence various lists of cards in an attempt to demonstrate which cards he had acquired prior to the marriage and which cards he had acquired after the marriage.

Carol hired an appraiser who estimated the value of the entire collection at $208,000. Michael testified that he believed the collection to be worth $100,000. After struggling with the evidence before it, the District Court abandoned its attempt to determine which cards were brought into the marriage or to place a value on the baseball cards. The court required Michael to divide the collection into two equal piles and allow Carol to select one pile of cards.

Michael argues, first, that the District Court erred in including in the marital estate those baseball cards he brought into the marriage. He also contends that the current value of such cards is not a product of contribution from the marital effort and should be excluded from the marital estate as his separate property.

3

This Court has repeatedly held that distribution of marital assets by a district court, where based upon substantial credible evidence, will not be overturned absent a clear abuse of discretion. In re Marriage of McFarland (1989), 240 Mont. 209, 213, 783 P.2d 409, 411.

Section 40-4-202(1), MCA, requires the courts to,

[E]quitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired. . . . In dividing property acquired prior to the marriage; . . . property acquired in exchange for property acquired before the marriage . . . ;[and] the increased value of property acquired prior to marriage; . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements. (Emphasis added.)

The District Court properly determined that the baseball card collection was a marital asset, however, it erred in not crediting Michael with the value, at the time of the marriage, of the cards he brought into the marriage.

The value of the premarital cards at the time of the marriage was undisputed between the parties. Michael testified that the value of the collection at the time of the marriage, or shortly thereafter, was approximately $5,000. Carol herself proposed in her Trial Memorandum, that in order "to equitably divide the property, the [District] Court should award $5,000.00 to the Petitioner to represent the value of the baseball card collection

4

that he brought into the marriage."

In considering the factors presented in § 40-4-202(1), MCA, it becomes apparent that the value of the premarital cards is not properly a part of the marital estate. The undisputed amount of $5,000 could not have been contributed to in any way by Carol.

However, the appreciation in value of the cards, including the premarital cards, properly could be included in the marital estate under § 40-4-202(1), MCA, if the evidence supported spousal contribution to that appreciated value. Michael argues that the increase in value of the premarital baseball cards was not related to any marital contribution from Carol. We disagree.

In the present case, substantial credible evidence exists to support the finding that Carol contributed to the maintenance and growth of the collection. Evidence shows that she encouraged Michael to collect the cards, participated in the collection by buying foods associated with particular cards, and, on at least one occasion, protected the cards from a flood while Michael was away from home. Testimony also indicated that Michael's card purchases strained the family budget at times, with the family sacrificing other items in order to build the collection.

It was not erroneous, under these circumstances, for the District Court to find that Carol contributed to the maintenance and growth of the card collection and, therefore, that she is entitled to share in the postmarital appreciation in value.

Thus, we hold that it was proper to include the baseball card collection as part of the marital estate, but that the District

5

Court erred in failing to credit Michael with the undisputed value of $5,000 for the baseball cards he brought into the marriage.

The second issue on appeal is whether the District Court erred in its valuation and distribution of Michael's retirement benefits.

Both parties produced expert witnesses to testify as to the present value of Michael's retirement benefits as a district court judge; both present value calculations assumed that Michael would retire at the age of sixty-five as a judge. Carol's expert witness testified that as of April 30, 1990, the present value of Michael's retirement benefits was $91,364. Michael's expert witness testified that the present value of Michael's retirement as of April 30, 1990, was $85,630.

Michael's expert witness also testified that the current value of Michael's retirement benefits, if he decided to withdraw the entire amount on April 30, 1990, was $28,115. Michael contended that this value was the appropriate amount to be distributed between the parties.

The District Court concluded that Michael's retirement was worth $91,364, the figure proposed by Carol's expert. The court distributed that value equally between the parties and ordered Michael to pay Carol her half of the $91,364 as part of an equalizing payment. We find the distribution of Michael's retirement benefits, although based upon substantial evidence, to be an abuse of discretion.

Carol's expert testified that his valuation of the retirement would be meaningless if, for any reason, the assumption that

6

Michael retire at age sixty-five as a judge became invalid. Thus, if Michael dies, resigns from the bench, is defeated in a re-election campaign, or for any other reason is not a judge at age sixty-five, the expert's valuation is invalid. Given the significant span of years involved, Michael's uncertainty about future plans and other factors, it was error for the District Court to rely on the present value methodology, thus placing all of the risks of future contingencies on Michael.

This Court stated in Glasser v. Glasser (1983), 206 Mont. 77, 669 P.2d 685, that, although present value of retirement benefits is the proper test in determining marital interest, further evidence may demonstrate that the value "might be affected by the contingency of the retirement benefits failing to reach levels used by the court." (Citations omitted.) Glasser at 85, 669 P.2d at 689. We noted several guidelines that are helpful in distributing retirement funds, including: that the court should disentangle the parties, where possible and equitable, by fixing a sum certain to be paid, and where the court determines that the parties will proportionately share the benefits, the parties should also share the risks of future contingencies, such as the employee spouse's death or delayed retirement, and payments to the receiving spouse should be made as the employee spouse receives the retirement pay. In addition, in determining if a lump sum award is appropriate, the court should consider the burden it would place on the paying spouse in view of the financial circumstances. Glasser at 85, 669 P.2d at 689.

In the present case, the District Court failed to consider these guidelines. By requiring immediate payment of Carol's one-half interest based on the present value methodology, Carol does not share at all in the substantial risks that the present value amount never will be realized. Furthermore, an immediate pay out of half the benefits places an unreasonable burden on Michael in view of his financial standing.

If Carol wishes to receive a present lump-sum distribution as her share of the retirement benefits, it should be based upon the $28,115 accrued contributions with interest allowed by law as of April 30, 1990. These funds represent the actual accrued value of the retirement benefits during the marriage and the amount available to Michael today should he leave the bench and withdraw the benefits. To require him to pay Carol half of that amount does not impose an unreasonable burden on him.

On the other hand, Carol may wish to share in the risk of future contingencies. If so, she is entitled to her proportionate share of the future benefits at such time as Michael actually receives the retirement benefits.

The test for determining the value of a retirement pension is present value. Kis v. Kis (1982), 196 Mont. 296, 639 P.2d 1151. However, where there are substantial future risks involved in the calculations of the value, both parties should share those risks.

The District Court abused its discretion in failing to consider the future risks relative to the benefits. That abuse of discretion was compounded by the District Court's not considering

8

the financial burden placed on Michael by requiring immediate payment. The two alternatives of distributing the benefits set forth above take into account these considerations. Carol should be allowed to select which of the two methods of distribution she prefers.

The final issue is whether the District Court erred in disregarding the values of certain marital assets disposed of by the parties following their separation but prior to the dissolution.

The District Court found that various items of property had been sold by the parties during the period that they were separated. It concluded that the proceeds had been used to pay normal living expenses and, consequently, the proceeds from those marital assets were not included in the marital estate.

Michael insists that the District Court has allowed Carol to unaccountably liquidate and dissipate marital assets. In so doing, according to Michael, the District Court is encouraging dissipation of marital assets following separation.

We find that substantial evidence exists in the record to support the findings of the District Court. Carol testified that the money was used to pay marital debts. Michael introduced no evidence to disprove Carol's testimony. As the District Court noted, Michael's argument was merely speculative.

We hold that the District Court did not abuse its discretion in concluding that the proceeds of the disposed marital property had been used for family debts and normal living expenses.

Affirmed in part, reversed in part, and remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with those parts of the majority opinion which reverse the District Court's distribution of appellant's retirements benefits, and which affirm the District Court's exclusion of certain assets from the marital estate.

I dissent from that portion of the majority opinion which includes any portion of appellant's baseball card collection acquired prior to the marriage as a marital asset.

The majority correctly points out that the disposition of property acquired prior to marriage is controlled by § 40-4-202(1), MCA. However, conspicuously absent from the majority opinion are any of our recent decisions which have applied that statute.

Our previous decisions would exclude the appreciated value of Michael's pre-marriage baseball cards, without some showing that Carol contributed to their appreciation. In Re Marriage of Herron, 186 Mont. 396, 608 P.2d 97 (1980); Becker v. Becker, 218 Mont. 229, 707 P.2d 526 (1985); In Re Marriage of Sirucek, 219 Mont. 334, 712 P.2d 769 (1985); In Re Marriage of Fitzmorris, 229 Mont. 96, 745 P.2d 353 (1987); In Re Marriage of McFarland, 240 Mont. 209, 783 P.2d 409 (1989).

For example, in Herron the District Court also divided marital property on a 50/50 basis, even though the majority of the property had been given to Mrs. Herron by her father. The Supreme Court found, however, that gifted property, like pre-acquired property,

is governed by § 40-4-202(1), MCA, and based upon that statute concluded:

> If none of the value of the property is a product of contribution from the marital effort. [sic] the District Court can justifiably find that the non-acquiring spouse has no interest in the property.

> *  *  *  *

> . . . Both parties here should share equally in the portion of the value of the gift property attributable to contribution from the marriage and appreciation during marriage. The Herrons should not, however, share equally in the total value of the property since the marital assets came to the marriage principally as gifts for Mrs. Herron's benefit.

Herron, 186 Mont. at 404-05.

Here, the majority justified giving half of the appreciated value of Michael's baseball cards to Carol because "Carol contributed to the maintenance and growth of the collection." The majority also relies on the following facts:

> Evidence shows that she encouraged Michael to collect the cards, participated in the collection by buying foods associated with particular cards, and, on at least one occasion, protected the cards from a flood while Michael was away from home. Testimony also indicated that Michael's card purchases strained the family budget at times, with the family sacrificing other items in order to build the collection.

All of these observations missed the point. None of these efforts on Carol's part had anything to do with the value of those cards which were acquired by Michael prior to his marriage. All of those efforts relate directly to those cards which were acquired by Michael after his marriage. The appellant agrees that those

12

cards acquired after his marriage to Carol should be included as a marital asset and divided equally between the parties.

Even those cards which were saved from a flood by Carol were cards which were acquired after the marriage. Any appreciation that occurred to pre-marriage baseball cards occurred simply by the passage of time and increased national interest in old baseball cards. It had nothing to do with any contribution by Carol.

The District Court's decision to include all of the baseball cards as a marital asset was primarily based upon the difficulty of determining which cards were in the estate before the marriage and which ones were not.

There was testimony from Michael, including corroboration from his records, which would have enabled the District Court to make that determination. However, presuming the District Court was dissatisfied with the conclusiveness of that testimony, and understanding that District Judges do not have the time to personally review a collection of 100,000 baseball cards, it would have been preferable to appoint a master or referee for that purpose, rather than divide the collection inequitably.

For these reasons, I dissent from that portion of the majority opinion which includes all but $5000 worth of appellant's baseball card collection as a marital asset. I would exclude all of those cards which the evidence established were acquired by appellant prior to his marriage.

_____
Justice

13