JUSTICE TRIEWEILER,
dissenting:
I respectfully dissent from the opinion of the majority. I would reverse the District Court’s failure to equally divide the proceeds from the sale of stock in the Bismarck Bottling Company, which was jointly owned by the parties.
The disposition of the disputed property is controlled by § 40-4-202(1), MCA, which requires that district courts “equitably apportion between the parties the property and assets belonging to either or both.” (Emphasis added.)
That portion of § 40-4-202, MCA, which relates to the interest “of the other spouse” in property acquired by gift is not applicable to this case because the District Court made a specific finding of fact that the parties were joint recipients of the stock. The proceeds from the sale of the stock were deposited in a joint account and at all times dealt with as a marital asset prior to the entry of the divorce decree. To deny John any interest in the proceeds from the sale of jointly owned stock which had an after-tax value of $689,000 at the time of sale, was not equitable and was a clear abuse of the trial court’s discretion.
The following facts illustrate the inequity of the property distribution in this case.
When John and Mary were married, John was employed by a Coca-Cola bottler in Bellingham, Washington. However, Carl Boustead preferred that his daughter return to Bismarck. Therefore, John and Mary were persuaded to return to Bismarck where John took a reduction in salary to take a position in top management of Bismarck Bottling.
John worked in the sales department, the delivery force, the production team, the management team, and in the warehouse. He eventually became operations supervisor, and by 1985 was promoted *305 to the position of operations manager. For all practical purposes, the day-to-day operations were managed by John while Mary’s father spent more and more time relaxing at his winter home in Arizona.
From 1982 to 1985, John and Mary were jointly given 40 shares of stock in Bismarck Bottling which represented 11.85 percent of the total outstanding stock. In its Amended Findings of Fact, the court specifically found that the parties were j oint recipients. It did not find that the stock was given to Mary alone.
There is no question that John contributed to the appreciation of the stock. The District Court specifically found that the value of total outstanding stock in Bismarck Bottling increased from $4 million in 1982, when John went to work for the company, to $10 million in 1986, when the company was sold. In other words, the value of the company increased by 150 percent under John’s leadership.
There was no evidence, nor any specific findings by the District Court, that Mary did anything to contribute to the appreciation of Bismarck Bottling or the stock that was issued to the parties.
John was described by other employees at the plant as a hard worker who brought professionalism to the bottling business, while Mary’s father and brother were depicted as being superficially and irregularly involved in the business’s management.
After the Bismarck Bottling Company was sold in 1986, the new owners hired John as the plant manager. During the 12 months of operation prior to the sale, with Mary’s family members involved in its management, the company produced profits in the neighborhood of $700,000. However, during the 12 months after acquisition, under John’s sole management, the profits increased to $1.3 million.
When the bottling company was sold in 1986 for approximately $10 million, the parties’ 11.85 percent interest generated proceeds of $889,000, which netted them $689,000 after taxes. The proceeds were placed in an investment account at First Bank of Bismarck.
As part of the sale, John executed a non-compete agreement, as well as a consulting agreement. The total contributions to the sale proceeds from John’s consulting and non-compete agreements amounted to $112,157, which was also placed in the parties investment account. These proceeds had nothing to do with the stock gifted to Mary and John, and had nothing to do with any efforts on the part of Mary. Yet, the District Court’s decree totally deprives John of this income which resulted directly and exclusively from his efforts.
Less than two months ago in In re Marriage of Keedy (Mont. 1991), [249 Mont. 47,] 813 P.2d 442, 48 St.Rep. 572, we affirmed a District *306 Court decree which awarded Carol Keedy 50 percent of the appreciated value of baseball cards acquired by her husband as an 11-year-old boy which, for the most part, had been stored in his mother’s garage in Nebraska during the couple’s marriage.
It has been said that consistency is the hobgoblin of small minds. However, it certainly has a place in jurisprudence. If so, it would not be apparent to the average lawyer in Montana who tries to reconcile our two most recent decisions on the division of marital property.
In the Keedy case, pre-acquired marital property was, for all practical purposes, divided equally between the parties, even though the non-acquiring spouse contributed nothing to its appreciation. In this case, property which was given jointly to both parties was distributed exclusively to the spouse who contributed nothing to its appreciation.
I believe the district courts of this state deserve better guidance than this regarding future disposition of marital and non-marital property.
For these reasons, I would reverse the District Corut’s disposition of the parties’joint investment account, and divide it equally between Mary and John.