No. 98-214

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 114N

IN RE THE MARRIAGE OF

DOROTHY H. MANGOLD,

Petitioner and Respondent,

and

GERALD D. MANGOLD,

Respondent and Appellant.

No

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kenneth Olson, Attorney at Law, Great Falls, Montana

For Respondent:

Marcia Birkenbuel, Attorney at Law, Great Falls, Montana

Submitted on Briefs: March 11, 1999

Decided: May 27, 1999

Filed:

_____

No

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Gerald D. Mangold (Gerald) appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, on its Findings of Fact, Conclusions of Law and Decree of Dissolution. We affirm.**

**¶3. Gerald raises the following issues on appeal:**

**¶4. 1. Did the District Court err in valuing the family residence and outbuildings?**

**¶5. 2. Did the District Court err in valuing and distributing life insurance and annuity proceeds?**

**¶6. 3. Did the District Court err in distributing a $6,000 loan repayment from the parties' daughter?**

**¶7. 4. Did the District Court err in not crediting Gerald with the value of his premarital assets?**

**¶8. 5. Did the District Court properly consider all the § 40-4-202, MCA, criteria in distributing the marital estate?**

## BACKGROUND

¶9. Gerald and Dorothy H. Mangold (Dorothy) were married on September 20, 1958. They separated in 1993, and Dorothy petitioned for dissolution in May of 1994. The District Court conducted a bench trial on July 30, 1997, following which it entered its Findings of Fact, Conclusions of Law and Decree dissolving Gerald and Dorothy's marriage and distributing their marital estate. Gerald subsequently filed a motion to amend the judgment or, alternatively, for a new trial, asserting that the District Court failed to make pertinent findings of fact, that certain of the findings of fact made were erroneous and, as a result, that several of the court's conclusions of law were incorrect. The District Court granted the motion in part by amending two findings of fact and one conclusion of law to account for taxes paid by Gerald when he cashed in two life insurance policies and an annuity in 1996; the remainder of Gerald's motion was denied. Gerald appeals, asserting error in the District Court's valuation and distribution of various items of the marital estate.

## DISCUSSION

¶10. 1. Did the District Court err in valuing the family residence and outbuildings?

¶11. Gerald and Dorothy own several pieces of real property, including a parcel consisting of 160 acres of irrigated farmland on which the family residence and a variety of outbuildings are located. Both Gerald and Dorothy presented the testimony of area real estate agents regarding the value of this property. Bev Cunningham (Cunningham), who testified on Dorothy's behalf, valued the 160-acre parcel, including the residence and outbuildings, at between $227,000 and $298,000. She further testified that the 160 acres of irrigated farmland were worth $850 per acre. Robert Schwartz (Schwartz), who testified on Gerald's behalf, opined that the 160-acre parcel was worth between $750 and $850 per acre. He valued the residence and outbuildings, separate from the land, at $20,000.

¶12. The District Court adopted the $850 per acre valuation to which both Cunningham and Schwartz testified in finding that the 160 acres of farmland were worth $136,000. Gerald does not dispute this valuation. With regard to the residence and outbuildings, the District Court valued the residence and outbuildings at $91,000 by adopting Cunningham's lower value of $227,000 for the entire property and subtracting the $136,000 value of the land. Gerald asserts that the court's valuation

of the residence and outbuildings is clearly erroneous.

¶13. A district court has broad discretion in determining the value of marital property in a dissolution proceeding. In re Marriage of Walls (1996), 278 Mont. 413, 416, 925 P.2d 483, 485. The court may adopt any reasonable valuation of such property which is supported by the record and its findings regarding valuation will not be set aside unless those findings are clearly erroneous. Marriage of Walls, 278 Mont. at 416, 925 P.2d at 485. "A finding is clearly erroneous only if it is not supported by substantial evidence, the trial court misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." In re Marriage of Kovarik, 1998 MT 33, ¶ 20, 287 Mont. 350, ¶ 20, 954 P.2d 1147, ¶ 20.

¶14. In arguing that the District Court's finding is clearly erroneous, Gerald contends that the court erred in relying on Cunningham's testimony to determine the value of the buildings. He asserts that Cunningham's testimony was not credible because she was Dorothy's personal friend, she was not a certified appraiser, she had not viewed the property in four years and the other properties to which she compared the property at issue to arrive at an estimated value were not sufficiently similar. He further asserts that the testimony of his witness, Schwartz, was more credible and the court should have adopted Schwartz's valuation.

¶15. When a district court acts as trier of fact, determinations of witness credibility and the weight to be given testimony is left to the sound discretion of that court. Marriage of Kovarik, ¶ 30 (citation omitted). Our function is to determine only whether there is substantial evidence supporting the court's findings of fact and we will not substitute our judgment for that of the trier of fact in weighing the evidence. Marriage of Kovarik, ¶ 30 (citation omitted). Both Gerald and Dorothy submitted evidence regarding the value of the property and the District Court accepted Dorothy's evidence. We conclude that substantial evidence supports the District Court's finding that the residence and outbuildings were worth $91,000 and, as a result, we hold that District Court did not err in valuing the family residence and outbuildings.

¶16. 2. Did the District Court err in valuing and distributing life insurance and annuity proceeds?

¶17. In 1996, Gerald cashed in two life insurance policies and an annuity. The cash value of the two insurance policies totaled $18,232.68, and the cash value of the annuity was $8,672.45. Gerald paid the income taxes due on the monies and gave Dorothy approximately $2,710 as her share of these proceeds. In its amended findings of fact and conclusions of law, the District Court valued the insurance policies and annuity at the amounts stated above, allocated $2,710 to Dorothy as her share, subtracted the amount paid for taxes from the remaining amount and distributed the $16,215 balance to Gerald.

¶18. Gerald asserts that the District Court erred in determining that his share of the insurance policy and annuity proceeds was $16,215. As stated above, a district court has broad discretion in determining the value of marital property and the court may adopt any reasonable valuation of such property which is supported by the record. Marriage of Walls, 278 Mont. at 416, 925 P.2d at 485. The court's findings regarding valuation will not be set aside unless those findings are clearly erroneous. Marriage of Walls, 278 Mont. at 416, 925 P.2d at 485. Furthermore, if the findings of fact underlying a district court's distribution of marital assets are not clearly erroneous, the court's distribution is reviewed to determine whether the court abused its discretion. Marriage of Kovarik, ¶ 21.

¶19. Gerald argues that the District Court's finding regarding his share of the insurance and annuity proceeds is clearly erroneous because the court failed to take into consideration that $18,000 of those proceeds were used to repay loans against the policies which he and Dorothy took during their marriage. He contends that the company carrying the insurance policies withheld the $18,000 for the loan payment when he cashed in the policies, he never received that money and, after the loan and the taxes were paid, he actually lost approximately $3,000 on the transaction. In other words, Gerald argues that, by valuing his share of the proceeds from the life insurance and annuity at $16,215 and distributing that amount to him, the court overstated the amount of the marital estate he received.

¶20. The problem with Gerald's argument is that the evidence does not support it. When questioned by his attorney regarding the amount received from the life insurance policies, Gerald testified as follows:

Q. I see. One thing I didn't ask you about, when you cashed in the life insurance policy, how much was the amount you would have been entitled to, the gross amount? Do you

No

remember?

A. The gross amount. There was a debt against that, Ken, and I can't really--I can't be--it would have been--it was split 27/10 and then $500 held out for her life insurance plus the taxes. I couldn't tell you what the--

Q. But there was a loan against the life insurance as well as the taxes?

A. Yes, that was satisfied.

Gerald did not testify as to the specific amount of the loan, only that the loan had been satisfied. Furthermore, Gerald submitted no documentary evidence that there was a loan against the insurance policies, the amount of any such loan or that money had been withheld from the insurance policy proceeds to repay the loan. The only documentary evidence submitted to the court were three Internal Revenue Service (IRS) forms stating the gross distribution amounts for the two insurance policies and the annuity, and Gerald's 1996 state and federal income tax returns showing the taxes he paid on those amounts. The District Court's findings as to the cash received by Gerald and the taxes he paid on the proceeds from the insurance policies and annuity match the amounts stated in the IRS forms and tax returns.

**¶21. We conclude that the District Court's findings of fact regarding the value of the cash proceeds from the life insurance policies and the annuity are not clearly erroneous. We further conclude that the court's distribution of those proceeds, based on its findings of fact as to value, was not an abuse of discretion. Therefore, we hold that the District Court did not err in valuing and distributing life insurance and annuity proceeds.**

**¶22. 3. Did the District Court err in distributing a $6,000 loan repayment from the parties' daughter?**

¶23. During their marriage, Gerald and Dorothy purchased a mobile home for their daughter to live in and apparently considered the purchase a loan to their daughter. Subsequent to the parties' separation, their daughter sold the mobile home and gave Gerald $6,000 in repayment of the loan. Dorothy did not receive any of this money. The District Court included the $6,000 in the marital estate and distributed it to Gerald. Gerald asserts error. As stated above, a district court's distribution of the marital estate is reviewed to determine whether the court abused its discretion. <u>Marriage of Kovarik</u>, ¶ 21.

¶24. Gerald contends that he used the loan repayment to pay off marital debt prior to trial and that, pursuant to In re Marriage of Keedy (1991), 249 Mont. 47, 813 P.2d 442, assets which have been previously used to pay marital debt or living expenses may be excluded from the marital estate. Because the $6,000 loan repayment no longer existed as an asset, Gerald argues that the District Court abused its discretion in including the $6,000 in the marital estate and distributing it to him.

¶25. It is true that assets used to pay marital debt during the period of separation prior to a marriage dissolution may be excluded from the marital estate. <u>Marriage of Keedy</u>, 249 Mont. at 53, 813 P.2d at 446. However, there must be substantial evidence in the record to support a finding that the assets have been used to pay such debts. <u>Marriage of Keedy</u>, 249 Mont. at 53, 813 P.2d at 446. Here, Gerald presented no evidence regarding the use to which he put the $6,000. He testified only that the mobile home was sold and that his daughter repaid the money which had been loaned to her for its purchase. Because there was no evidence which would support a determination that the $6,000 had been used to pay marital debt, we conclude that the District Court did not abuse its discretion in including that asset in the marital estate and distributing it to Gerald. We hold that the District Court did not err in distributing the $6,000 loan repayment from the parties' daughter.

¶26. 4. Did the District Court err in not crediting Gerald with the value of his premarital assets?

¶27. At the time Gerald and Dorothy married, Gerald owned 240 acres of land, 40 head of milk cows and a variety of farm machinery and equipment. He valued his net worth prior to the marriage at $43,000. The District Court concluded that, under § 40-4-202(1), MCA, it was appropriate to include Gerald's premarital property in the

marital estate. Gerald asserts that the court erred by not crediting him with the value of his premarital property when distributing the assets of the marital estate. Again, we review a court's distribution of marital property to determine whether the court abused its discretion. Marriage of Kovarik, ¶ 21.

¶28. The distribution of marital property in a dissolution proceeding is governed by § 40-4-202, MCA. With regard to the distribution of premarital property, that statute provides as follows:

(1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA. "This statute vests the district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances." In re Marriage of Binsfield (1995), 269 Mont. 336, 343, 888 P.2d 889, 893 (citation omitted).

¶29. The District Court found that Gerald and Dorothy had been married for 35 years before permanently separating and that, during their marriage, they both worked on the family farm operation. The District Court noted that Gerald had substantially more assets than Dorothy upon entering their marriage, but concluded that Dorothy's substantial nonmonetary contributions to the marriage facilitated the maintenance of the property. The court also stated that it was not awarding maintenance to either party because both were distributed sufficient property for

their support.

¶30. Dorothy testified regarding the numerous activities she undertook in assisting with the farm operation, as well as her role as the primary homemaker and caretaker of the parties' four children, throughout the marriage. She also testified that, after the children were grown, she worked full-time for a number of years at a local grocery store, bringing in additional money to help maintain the family property. Finally, Dorothy testified that she cashed in her retirement account from her employment and used the proceeds to remodel the family residence. Gerald did not dispute that Dorothy made substantial contributions to the marriage.

¶31. The District Court did not make findings of fact detailing Dorothy's specific activities and contributions to the marriage. While trial courts are encouraged to make such findings, we conclude that the District Court's findings that Dorothy made substantial nonmonetary contributions to the marriage which facilitated the maintenance of the property Gerald brought into the marriage are supported by substantial--and undisputed--evidence and are not clearly erroneous. We further conclude, pursuant to the § 40-4-202(1), MCA, criteria and the circumstances of this case, that the District Court did not abuse its discretion in including Gerald's premarital property in the marital estate and equitably distributing the property. We hold, therefore, that the District Court did not err in not crediting Gerald with the value of his premarital assets.

¶32. 5. Did the District Court properly consider all the § 40-4-202, MCA, criteria in distributing the marital estate?

¶33. As stated above, § 40-4-202, MCA, governs the division of property in a dissolution proceeding. The statute provides that, in apportioning the marital property, the trial court shall take into consideration

the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of a spouse as a homemaker or to the family unit.

Section 40-4-202(1), MCA. Gerald contends that the District Court did not fairly consider all the statutory criteria in distributing the marital estate. More specifically, he asserts that the court assigned all of the marital debt to him, but did not award him sufficient income-producing assets with which to pay that debt.

**¶34. Gerald's argument that the District Court did not award him sufficient income-producing assets is premised on his assertions that the court's valuation and distribution of the family residence, the life insurance and annuity proceeds, and the $6,000 payment from the parties' daughter were erroneous. He argues that, because the court's determinations regarding these assets were erroneous, the value of his share of the marital estate actually is less than that stated by the court and, consequently, the division of the property is not equitable.**

**¶35. We held above that the District Court's valuations of the assets at issue were not clearly erroneous and its distribution of those assets, based on those valuations, was not an abuse of discretion. As a result, the premise underlying Gerald's arguments in this issue fails. We hold, therefore, that the District Court properly considered the § 40-4-202, MCA, criteria in distributing the marital estate.**

**¶36. Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

No

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART